IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SELMA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO.<br>) _____ |
| v. | )<br>) |
| OLYMPIA CONSTRUCTION, INC. | ) **COMPLAINT**<br>) **JURY TRIAL DEMANDED** |
| Defendant. | )<br>)<br>)<br>) |

## NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race ("black") and retaliation, and to provide appropriate relief to Adrian Soles ("Soles"), George McWilliams ("McWilliams") and an aggrieved class member, Anthony Moorer ("Moorer"), who were all adversely affected by discriminatory practices.

As alleged with greater particularity in paragraphs six (6) through seventeen (17) below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that Olympia Construction, Inc. ("Defendant," or "Olympia Construction") violated Title VII when it subjected Soles, McWilliams and Moorer to a racially-hostile work environment, and terminated their employment because they opposed a racially-hostile work environment and because they made a charge, testified, assisted, or participated in an investigation or proceeding under Title VII of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United District Court for the Southern District of Alabama, Selma Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Section 706(f)(1 ) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, the Employer, has continuously been an Alabama corporation doing business in the State of Alabama and the City of Albertville, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Soles and McWilliams filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7.      In 2011, Defendant hired Soles, McWilliams and Moorer as laborers, primarily to perform certain clean up duties at Defendant's Selma, Alabama construction site.

8.      From approximately April 2011 through August 2011,  Defendant engaged in unlawful employment practices at its Selma, Alabama construction sites and facilities in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), and 704 of Title VII, 42 U.S.C. Section 2000e-3(a).

9.      More specifically, the Commission avers the following :

   a. Defendant, through its Project Superintendent and a supervising assistant by the name of "Jose," regularly and continually referred to and/or addressed Soles, McWilliams and Moorer in racially-derogatory terms including the terms "colored boy" and "nigger";

   b. The Project Superintendent was the highest official at the work site and almost never used Soles', McWilliams', or Moorer's actual names;  instead he called and referred to them using racially-derogatory terms;

   c. By way of  additional example, the Project Superintendent referred to Soles, McWilliams and Moorer using the racial epithet and as "lazy niggers," and "not worth shit;"

   d. The Project Superintendent directly, and also through "Jose," routinely barked directions at Soles, McWilliams and Moorer as they worked, unreasonably monitored their work, routinely threatened them with termination, and routinely treated them in a hostile and oppressive manner.

   e. The Project Superintendent directly, and also through Jose, required them to perform tasks outside their regular job description including digging holes, washing his car, and an assortment of other similar duties;

   f. The Project Superintendent directly, and also through Jose, only allowed Soles, McWilliams, and Moorer a single nominal break during their 8-hour work day and would deduct an hour from their pay when he claimed they were even 2-3 minutes late from the break;

   g. The Project Superintendent and Jose did not treat non-black employees in the hostile, oppressive and unfair manner in which they treated Soles, McWilliams and Moorer;

   h. When Soles, McWilliams and Moorer voiced even the slightest objection  about how they were being treated, they were told that they could quit if they did not want to work;

10.     Defendant did not maintain or did not provide Soles, McWilliams or Moorer any

3

written or verbal policies, procedures, guidance or direction related to race discrimination or harassment, including how to report it or address it.

11. Defendant took no affirmative action to prevent or stop the racially harassing environment.

12. The three employees with the assistance of Soles' relative contacted the EEOC on or about August 9, 2011 and made inquiries about filing complaints of discrimination with the agency.

13. On or about August 10, 2011, the Project Superintendent angrily told Soles, McWilliams, and Moorer, "you colored boys go home." He called them lazy, used the N word repeatedly during his tirade and told them to check with him the following Monday about the status of their employment.

14. Later that day, Soles' conferred with his Aunt about the Project Superintendent's comments and actions. They located the phone number for Defendant's main office and spoke with an official named "Bill," and a person identified as one of the owners.

15. During the telephone conversation, Soles' Aunt identified herself, complained about the racial comments and conduct, and said it was strange that Soles, McWilliams and Moorer were sent home after they had taken steps to file an EEOC complaint. Defendant requested and the employees refused to abandon the pursuit of charges of discrimination.

16. When Soles, McWilliams and Moorer reported to work the following Monday, August 15, 2011, Sowell advised them they were no longer needed. Despite meetings that day with higher company management officials, Defendant declined to change the termination decision and did not allow Soles, McWilliams, and Moorer to return to work.

17. Again during the Monday meetings, Defendant suggested that jobs might be

available if the employees abandoned the pursuit of charges of discrimination.

## Count I
## Racially Hostile Work Environment in Violation of Title VII

18. The allegations of paragraphs six (6) through seventeen (17) are incorporated herein by reference.

19. The harassment by Sowell culminated in the termination of Soles, McWilliams and Moorer.

20. The hostile work environment to which Soles, McWilliams and Moorer were subjected was perpetrated by coworkers, employees with direct supervisory authority over them and occurred on a daily or almost daily basis.

21. Defendant knew or should have known of the racially hostile work environment because its senior manager was the primary harasser and because of its frequent and notorious nature, and/or because the black employees complained about it.

## Count II
## Retaliation in Violation of Title VII

22. The allegations of paragraphs six (6) through seventeen (17) are incorporated herein by reference.

23. The aggrieved employees engaged in protected activity as defined under Title VII.

24. As a direct and proximate result of their opposition to discrimination, Defendant took an adverse employment action against each of them.

25. Defendant terminated Soles, McWilliams and Moorer because they opposed the discriminatory conduct, and participated in the filing of a complaint with EEOC.

26. The effect of the practices complained of above in paragraphs six (6) through seventeen (17) has been to deprive Soles, McWilliams and Moorer of equal employment

opportunities, and otherwise adversely affect their status as employees because of their race (black), and in retaliation for their having engaged in activity protected by Title VII.

27.     The unlawful employment practices complained of above in paragraphs six (6) through seventeen (17) were intentional.

28.     The unlawful employment practices complained of above in paragraphs six (6) through seventeen (17) were done with malice or with reckless indifference to the federally protected rights of Soles, McWilliams and Moorer.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, attorneys, and all persons in active concert or participation with it, from maintaining a racially-hostile work environment, and engaging in retaliatory conduct prohibited by Title VII.

B.     Order Defendant to institute and carry our policies, practices, and programs which provide equal employment opportunities for blacks and prohibit retaliation and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make whole Soles, McWilliams and Moorer by providing backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.     Order Defendant to make whole Soles, McWilliams and Moorer by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.     Order Defendant to make whole Soles, McWilliams and Moorer by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices

complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self esteem, and loss of civil rights, all in amounts to be determined at trial.

      F.      Order Defendant to pay Soles, McWilliams and Moorer punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

      H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,


 /s/ C. Emanuel Smith\_\_\_\_\_
C. EMANUEL SMITH
Regional Attorney
Emanuel.Smith@eeoc.gov
MS Bar # 7473

 /s/ Julie Bean_____
JULIE BEAN
Supervisory Trial Attorney
Julie.Bean@eeoc.gov
DC Bar # 433292

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, AL 35205
Telephone: (205) 212-2067
Facsimile:  (205) 212-2041